UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLOBAL TECHNOLOGY, INC.,

          Plaintiff,

v.

NINGBO SWELL INDUSTRY, CO., LTD.,

          Defendant.
_____/

Civil Action No. 2:19-cv-10934
Honorable Gershwin A. Drain
Magistrate Judge David R. Grand

# REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO DISMISS [34]

This is a breach of contract case in which plaintiff Global Technology, Inc. ("Global") seeks commission payments from defendant Ningbo Swell Industry, Co., LTD. ("Ningbo"). The relationship between Global and Ningbo is governed largely by a Sales Representative Agreement ("SRA"). The SRA provides, "This Agreement shall remain in effect for a period of four (4) years. It will be considered automatically renewed for successive four (4) year terms unless notice of intent not to renew is given in writing by either party at least ninety (90) days prior to expiration of the then current term, in which case this Agreement shall be terminated as of the end of the then current term." (ECF No. 1-1, PageID.17.)

Paragraph 3.1 of the SRA begins, "[Ningbo] agrees to pay [Global] a commission of 5% on any and all shipments of products to customers within [Global's] Territory during the term of this Agreement." (ECF No. 1-1, PageID.16.) However, Paragraph 4.2 of the SRA provides that, "[i]n the event of termination or expiration of this Agreement, . . . [certain] Commissions shall be paid for the life of the Products." (ECF No. 1-1, PageID.18.)

The parties agree that the SRA was terminated on December 13, 2011. (ECF No. 1, PageID.4; ECF No. 34, PageID.321.) The main issue in this case is the amount of post-termination commissions, if any, Ningbo owes to Global. Global contends that Paragraph 4.2 "clearly identifies Ningbo's obligation to pay post-termination commissions." (ECF No. 35, PageID.440.) Relying on Paragraph 3.1, Ningbo argues that it only "agreed to pay commissions '**during the term of this agreement**'—not in perpetuity." (ECF No. 36, PageID.505.) (emphasis in original). While the parties dispute its relevance to the issues presently before the Court, it appears undisputed that for six years after the SRA's termination, Ningbo continued to pay commissions to Global with respect to at least certain products. (ECF No. 34, PageID.436.)

Before the Court is Ningbo's motion to dismiss. (ECF No. 34.) Global responded and Ningbo replied. (ECF Nos. 35 and 36.) The issues are straightforward. Oral argument is not necessary to aid the Court in its decision.

**I. RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Ningbo's Motion to Dismiss **(ECF No. 34)** be **DENIED**.

**II. REPORT**

    **A. Background**

Ningbo manufactures "automotive trimming parts, such as emblems and nameplates . . ." (ECF No. 1-1, PageID.14.) Global "is a sales representative, serving a variety of entities, soliciting and procuring business opportunities on their behalf." (ECF No. 1, PageID.2.) Effective December 12, 2003, Global and Ningbo entered into the SRA pursuant to which Global agreed to be Ningbo's "Sales Agent to solicit business with respect to [Ningbo's] Products." (ECF No.1-1,

2

PageID.14.) The parties agree that the SRA was terminated on December 13, 2011.[1] For six years after the SRA's termination, Ningbo continued to pay commissions to Global with respect to shipments of 137 products – nameplates and emblems for a variety of vehicles and vehicle models (the "137 Products"), although in 2018 Ningbo stopped paying commissions on these products.[2] (ECF No. 34, PageID.436; ECF No. 35, PageID.435-36; ECF No. 35-2.) Global alleges that Ningbo also failed to pay post-termination commissions on other products, including 4x4 nameplates for at least eleven Fiat Chrysler Automobile models/vehicles (the "Other Products"). (ECF No. 35, PageID.442.)

On March 29, 2019, Global filed the instant action asserting a breach of contract claim against Ningbo for failure to pay post-termination sales commissions. (ECF No. 1.) Among other relief, Global seeks a declaratory judgment, an accounting, and monetary damages for breach of the SRA.

For the purposes of Ningbo's instant motion, there are three relevant paragraphs in the SRA. The first sentence of Paragraph 3.1, titled "Commission and Compensation," states that "[Ningbo] agrees to pay [Global] a commission of 5% on any and all shipments of products to customers within [Global's] Territory during the term of this agreement." (ECF No. 1-1, PageID.16.) Section 3 continues on to detail the method and means by which commissions are to be paid. (*Id.*)

---

[1] The SRA was amended twice, but those amendments have no bearing on the issue in this case.

[2] Global refers to these as the "Undisputed Products." (*See e.g.*, ECF No. 35, PageID.436) ("To be clear, Ningbo paid commissions on shipments of the undisputed Products ('Undisputed Products') for more than six (6) years after the SRA was terminated in accordance with the parties' Agreement. Some of these Undisputed Products continue to be shipped to this day and commissions related to these shipments are included in Global's claim.") However, because even these products are at issue in this litigation, the Court refers to them as the "137 Products."

A plain reading of Paragraph 4.2 suggests that it concerns Ningbo's obligation to pay certain commissions to Global *after* the SRA's termination. It states in full:

> In the event of termination or expiration of this Agreement, as provided above, commissions shall be paid to Agent, as provided under Paragraph 3 hereof, on all invoiced shipments of Products, where such Products were either produced for the customer prior to the effective date of termination or expiration of this Agreement or where the business regarding such Products was procured prior to the effective date of termination or expiration of this Agreement. Commissions shall be paid for the life of the Products. The term "life of the Products" means for as long as the Product is being sold by Principal to the customer regardless of the customer's usage of that product within or outside of a given platform or model vehicle family. This provision shall apply to all shipments thereto or any subsequent order, reorder or continuation thereof. A Product shall be considered as being the same Product regardless of a change of part number or a change in manufacturing methods or product dimensions if the end use is functionally the same.

(ECF No. 1-1, PageID.18.) Furthermore, Paragraph 4.3 provides that "business shall be considered procured prior to the effective date of termination or expiration of the [SRA] if a Customer's request for quotation or [Ningbo's] quotation is issued prior to the effective date of termination or expiration of this [SRA] and a purchase order, purchase agreement, business award letter or other declaration of intent to purchase, oral or written, is made by the Customer prior to or within one (1) year after the effective date of termination or expiration of this [SRA]." (*Id.*)

Ningbo now moves to dismiss Global's complaint, arguing principally that (1) Global's claims are barred by Michigan's six-year statute of limitations, and (2) Ningbo cannot owe Global any commissions because "no contract between these parties has existed since 2011" and "the plain language of the terminated [SRA] does not support Global's claims." Ningbo's arguments lack merit. The SRA is, at a minimum, ambiguous as to Ningbo's obligation to pay commissions to Global *post-termination*. Thus, the fact that the SRA was otherwise terminated in 2011 does not doom Global's claims as a matter of law. Similarly, because Global's post-termination

4

commission claims would not accrue until after Ningbo failed to pay them on their due dates, it is those dates – not the SRA's termination date – on which the statute of limitations began to run.

### B. Standard of Review

Ningbo "moves this Court pursuant to Federal Rule of Civil Procedure 12(c) to dismiss the complaint filed by [Global] for failure to state a claim upon which relief can be granted." (ECF No. 34, PageID.313.) While Rule 12(c) governs motions for judgment on the pleadings and Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted, any discrepancy as to which Rule Ningbo moves under is immaterial; "A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the grounds that the complaint does not state a cognizable claim is reviewed under the standards that govern motions brought under Rule 12(b)(6)." *Abner v. Cty. of Saginaw Cty.*, 496 F. Supp. 2d 810, 816 (E.D. Mich. 2007).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

5

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenant, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### C. Analysis

#### i. Statute of Limitations

Ningbo argues that Global's claims are barred by the six-year statute of limitations for breach of contract claims under Michigan law. MCL § 600.5807(9). Because the SRA was terminated effective December 13, 2011, Ningbo argues that Global's entire complaint is barred because it was filed with this Court over seven years after termination. (ECF No. 34, PageID.327.) Global counters that in light of Section 4.2 of the SRA, this is a "life of the product" case, whereby at least certain contractual obligations – including payment of post-termination commissions on sales of applicable products – do not end upon termination, but continue for the life of the product. (ECF No. 25, PageID.435, PageID.440-41.)

Under Michigan law, the statute of limitations for breach of contract is six years. MCL § 600.5807(9); *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, P.C. v. Bakshi*, 771 N.W.2d 411, 417 (Mich. 2009). For breach of contract claims, "the limitation period generally begins to run on the date that the breach occurs." *Seyburn*, 771 N.W.2d at 417. Michigan law makes clear that post-

6

termination commission contracts are treated as installment contracts whereby failure to make each payment when due is a separate breach. In *H. J. Tucker & Assocs. v. Allied Chucker & Eng'g Co.*, 595 N.W.2d 176, 183, 186 (Mich. Ct. App. 1999), a case involving "for the life of the part" "posttermination commissions," the Michigan Court of Appeals explained, "[a]lthough defendant asserts that plaintiff's claim accrued in 1986, more than six years before plaintiff filed its complaint, and thus the entire breach of contract action was time-barred, we conclude that claims for [post-termination] payments due under the contract between the parties are analogous to claims for payments under an installment contract . . . which accrue as each payment becomes due."

Here, as explained below, although the SRA was terminated effective December 13, 2011, in light of Section 4.2, the SRA is at least ambiguous as to Ningbo's obligations to pay post-termination commissions to Global. Thus, the statute of limitations period in this case begins to run not from the date the SRA was otherwise terminated, but from the date of each alleged post-termination breach, *i.e.*, the date when a commission that was due went unpaid.

At this stage of the proceedings, the Court cannot say when (or if) any particular post-termination commission payment became due. However, because under Section 4.2 of the SRA any such payments could have come due well after the SRA's termination date, Ningbo is not entitled to judgment as a matter of law on its argument that the statute of limitations expired six years after the SRA's December 13, 2011 termination.

### ii. Failure to State a Claim Upon Which Relief Can be Granted

To survive a motion to dismiss on a breach of contract claim, Global must establish the existence of a contract and its breach. Ningbo argues that Global fails to plead the existence of a contract because the SRA is unambiguous in limiting its contractual obligations to the term of the SRA. Specifically, relying on Paragraph 3.1's reference to commissions being paid by Ningbo

7

"during the term of the agreement," Ningbo argues that the SRA unambiguously establishes that it only owed commissions to Global "during the term of the agreement." (*Id.* at PageID.334-35.) Ningbo argues that commissions referenced in Paragraph 4.2 are limited by Paragraphs 3.1 and 4.3 (which allows a one-year post-termination window to determine when a sale was "procured"). (*Id.* at PageID.336-37.) Ningbo also argues that Global's interpretation of the SRA is unconscionable as it would allow for payments in perpetuity, and that Global fails to allege sufficient facts for the breach of contract claim. (ECF No. 34, PageID.319.)

Global responds by pointing to Paragraph 4.2's reference to commissions owed "for the life of the Products," and the same Paragraph's reference to such commissions arising in connection with "the event of termination or expiration of the [SRA] . . ." (ECF No. 35, PageID.449; ECF No. 1-1, PageID.18.) Global contends that Paragraph 3.1's reference to commissions being paid by Ningbo "during the term of the agreement" only "define[s] Ningbo's obligation to pay commissions **during the term** of the SRA by establishing the commission rate, the Territory and other payment related matters." (*Id.* at PageID.449-50) (emphasis in original.) Global further argues that Ningbo's post-termination commission payments to Global shows that Ningbo understood that its "life of the Products" commissions obligation survived the SRA's termination. (*Id.* at PageID.437-38.)

> a. *The SRA is at Least Ambiguous as to Post-Termination Obligations*

At a minimum, the plain language of the SRA's relevant clauses creates an ambiguity as to Ningbo's post-termination commission obligations. When interpreting a contract, the cardinal rule is to determine the parties' intent. "If a contract uses clear and unambiguous language, the court should not look to extrinsic facts to establish the parties' intent;" rather, such a contract presents a question of law for the court to decide. *Clark Bros. Sales Co. v. Dana Corp.*, 77 F.

Supp. 2d 837, 843 (E.D. Mich. 1999); *Gerken Paving, Inc. v. LaSalle Grp., Inc.*, 558 F. App'x 510, 514 (6th Cir. 2014). The contract should be read as a whole, giving the contract language its ordinary and natural meaning. *Id.* at 515; *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 415 (Mich. Ct. App. 1997). Courts must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 467 (2003). "Every part and provision in [the contract] [] must all be considered together, and so construed as to be consistent with every other part." *Cain Rest. Co. v. Carrols Corp.*, 273 F. App'x 430, 436 (6th Cir. 2008) (quoting *Johnston v. Miller,* 40 N.W.2d 770, 771-72 (Mich. 1950)). If a contract is ambiguous, courts may examine extrinsic evidence to discern the parties' intent. *Shay v. Aldrich*, 487 Mich. 648, 660 (2010).

Applying these principles, Ningbo's contention that the SRA unambiguously obligated it to pay commissions only until the December 13, 2011 termination date lacks merit. Although Paragraph 3.1 references commissions being paid to Global "during the term of the agreement," Ningbo's position impermissibly ignores that Paragraph 4.2 comes into play if there is a termination of the SRA, and then states that certain "Commissions shall be paid for the life of the Products." (ECF No. 1-1, PageID.18.) It would make no sense to explain that "[i]n the event of termination" commissions were to be paid "for the life of the Products" if Ningbo's obligation to pay commissions entirely ceased upon the SRA's termination date. *Klapp*, 468 Mich. at 467. At a minimum, the provisions in question, when read together, reflect an ambiguity about how the parties intended to handle post-termination commissions. This alone warrants denying Ningbo's motion to dismiss.

9

Moreover, the ambiguity allows the Court to look beyond the four corners of the SRA to determine the parties' intent. *Shay*, 487 Mich. at 660. Doing so also favors denying Ningbo's motion, as Global has alleged (and Ningbo does not seem to dispute) that Ningbo paid commissions to Global on the 137 Products for six years after the SRA's termination date. Indeed, that evidence strongly suggests that the parties understood that Global was entitled to at least certain commissions after the SRA's termination date.[3]

For all of these reasons, Ningbo's contract interpretation argument fails at the motion to dismiss stage.

### b. Enforcing a "Life of the Products" Provision is Not Unconscionable as a Matter of Law

Ningbo argues that Global's interpretation of the SRA is unconscionable as it would allow for payments in perpetuity. (ECF No. 34, PageID.343.) However, "life of the products" provisions are not inherently unconscionable. Unconscionability under Michigan law is governed by MCL § 440.2302. A contract or contract provision is considered unconscionable when both procedural and substantive unconscionability are present. *Allard v. Allard*, 867 N.W.2d 866, 877 (Mich. Ct. App. 2014). A contract is procedurally unconscionable where there is an absence of meaningful choice in accepting the contract on the terms provided. *Allen v. Mich. Bell Tel. Co.*, 171 N.W.2d 689, 692 (Mich. Ct. App. 1969). In determining freedom of choice to contract, the court must ask "what is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?" *Id.* A contract is substantively unconscionable where the inequity of the term is so extreme as to shock the conscience. *Allard*,

---

[3] It is also worth noting that Global produced a letter from Ningbo's counsel regarding the post-termination commissions resulting from the SRA. (ECF No. 35-2.) This letter affirmed Ningbo's understanding that commissions to Global would continue for the life of the product, which "may exceed more than one year" post-termination. (*Id.* at PageID.460-61.)

867 N.W.2d at 877. Notably, "a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other." *Id.*

"Life of the products" provisions are not unconscionable because they require commission payments in perpetuity. Ningbo cites *Aerel, S.R.L. v. PCC Airfoils, L.L.C.* to support the proposition that the construction of a contract to require payment of sales commissions for an indefinite period of time following termination is unreasonable. 448 F.3d 899, 904 (6th Cir. 2006). However, this claim is misguided for two reasons. First, unlike in this case, the contract in *Aerel* explicitly stated that post-termination commissions were to cease 18 months after termination. *Id.* at 901. Second, "life of the product" provisions have been litigated in other cases involving the automobile industry, without any finding that they are improper, let alone "unconscionable." *See, e.g.*, *Kingsley Assocs. v. Moll Plasticrafters*, 65 F.3d 498, 502 n.5 (6th Cir. 1995); *Terry Barr Sales Agency v. All-Lock Co.*, 96 F.3d 174, 176 (6th Cir. 1996). Therefore, Ningbo has not shown that the SRA's "life of the Products" provision is substantively unreasonable nor that it "shock[s] the conscience." *Allard*, 867 N.W.2d at 877.

Nor has Ningbo shown the SRA's "life of the Products" provision is procedurally unconscionable. As Global points out in its response, Ningbo is a large, global, Chinese manufacturing company which gives it at least equal bargaining power with Global with respect to negotiating the terms of the SRA. (ECF No. 35, PageID.451.)

For all of these reasons, Ningbo's unconscionability argument fails.

### c. *Global Alleged Sufficient Facts for Its Breach of Contract Claim*

Ningbo's argument that Global failed to allege sufficient facts to establish a breach of contract claim lacks merit. A breach of contract claim has three elements. A plaintiff "must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party

11

breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 817 N.W.2d 609, 619 (Mich. Ct. App. 2012).

Global has alleged facts demonstrating the existence of the SRA, that Ningbo owed it post-termination commissions on the 137 Products and the Other Products, and that Ningbo failed to pay those commissions, causing Global to suffer damages. (ECF No. 1, PageID.8; ECF No. 35, PageID.436, 438.) These allegations are sufficient to state a breach of contract claim.

Ningbo's reliance on *Barber v. SMH (US)*, 509 N.W.2d 791 (Mich. Ct. App. 1993), does not alter the analysis. *Barber* is inapposite because in that case, the contract contained an express provision limiting commissions to shipments made "as of the date of termination," *id.* at 796, whereas the SRA has no such limiting provision. Indeed, the SRA seems to contemplate commission payments for certain shipments made well beyond the SRA's termination date.

For all of these reasons, Global has alleged sufficient facts to establish a plausible breach of contract claim.

### III. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Ningbo's Motion to Dismiss **(ECF. No. 34)** be **DENIED**.

Dated: June 23, 2020                           s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                                                United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 23, 2020.

                                                           s/Eddrey O. Butts
                                                           EDDREY O. BUTTS
                                                           Case Manager

Dated: June 23, 2020